Thomson, J.,
delivered the opinion of the court.
This suit was brought by the appellants to recover from the appellee, as assignee of M. H. Smith, a banker at Ster *257 ling, Colorado, the unpaid balance of a draft alleged to have been deposited with Smith for collection, and collected by him before making the assignment. A trial of the issues made by the pleadings resulted in a judgment for the defendant, from which the plaintiffs appealed.
On, and for a considerable time before, the 17th day of June, 1893, the plaintiff Tedmon was register, and the plaintiff Meldrum, receiver, of The United States land office at Sterling. On that day The Union Pacific Railway Company delivered to the plaintiffs its cheek for $2,614, payable to their order, upon the Omaha National Bank of Omaha, Nebraska, for funds due them, as officers, upon a list of lands selected by the Railway Company under a grant from the government of the United States. The cheek was payable to them in their official capacity, and was kept in their office until the first day of July following. On the latter day the check was, as the plaintiffs allege, delivered to Smith for collection by Meldrum, who indorsed it “ H. E. Tedmon, Register, by N. H. Meldrum. N. H. Meldrum, Receiver.” Instead, however, of forwarding it for collection as the agent of the plaintiffs, Smith credited the money it represented to the personal account of Meldrum on the books of the bank, and sent the draft to The Denver National Bank, at Denver, Colorado, receiving a notice two days later from the latter bank that it had placed the amount of the draft to the credit of Smith’s bank. On the 19th day of Juty, Smith made an assignment of all his property for the benefit of his creditors to John M. Henderson. The latter immediately resigned, and upon the next day the defendant was duly appointed as his substitute. About eight o’clock on the morning of the 19th, and about thirty minutes, as Smith says, before he executed the deed of assignment, Meldrum, who was present in the bank at Smith’s request, drew his check upon Smith’s bank, —known as “ The Bank of Sterling,” — for the entire amount of his balance in the bank, and received from Smith $1,000 in cash, and a draft on Kountze Bros., bankers, New York *258 City, for $1,943.71. The payment of this draft was stopped by the defendant as assignee, and it was returned unpaid.
The principal question discussed by counsel relates to the right of the owner of a trust fund to follow it into an insolvent estate, and enforce full payment from the assets. We have no disagreement with counsel upon their general statements of the law. If the check was given to Smith by the plaintiffs for collection only, if he collected it, and if the money realized from it went with his other property into the possession of his assignee, the right of the plaintiffs to reclaim it is unquestionable; and the right would not be in the least affected by any unauthorized act of Smith in destroying its identity by intermingling it with his own funds. First Nat. Bank v. Hummel, 14 Colo. 259.
The difficulty, however, in this case does not arise out of any law which may be applicable, but out of the facts. To warrant us in reversing this judgment, it must clearly appear that the draft was delivered to Smith to be by him collected for the plaintiffs, thus constituting him their agent for that purpose; and that the money was collected by him, and passed into the hands of his assignee. These two conditions must concur before the estate is chargeable with the fund. McClure v. Commissioners, 19 Colo. 122; Holden v. Piper, 5 Colo. App. 71.
An examination of the evidence upon the subject of the deposit of the check will be first in order. Meldrum and Smith both testified that it was deposited with. Smith for collection. Each related a conversation had between them about the time of the deposit, in which Meldrum said to Smith that the check was sent to pay the expenses of the balance of the selection of The Union Pacific Railway Company in the district, that it was quite a large sum of money, and that he would not call on Smith for the cash until the check was collected. No other conversation upon the subject was given. We have no reason to doubt that it occurred as stated, or that both parties, properly or improperly, interpreted it as meaning that the draft should be received by *259 Smith to be collected by him for Meldrum. But there was in evidence a deposit slip, of which the following is a copy:
“Deposited in The Bank of Sterling, by N. H. Meldrum.
“Sterling, Colo., July 1st, 1893.
“ Please list each check separately.
Dollars. Cents.
Currency,......$ 45 00
Gold, . ......
Silver, .......
Checks,...... . 2,614 00
50 95
16 00
16 00
16 00
16 00
15 00
20 00
8 20
8 25
8 50
7 00
7 00
5 00
$2,852 90”
This is the form of slip filled out by a customer of a bank upon making a general deposit, and from which it makes the entries in its books. It was shown, and is not disputed, that the slip in evidence was filled up in the handwriting of Mr. Meldrum. The slip shows that on July 1st Meldrum deposited, for the purpose of being credited to his personal account, a sum aggregating $2,852.90, one of the items of which was the check in question. It is not claimed that it was intended that any other check, or any other item embraced in the sum total, should be deposited specially; or that' it was not proper to credit any of them, except the *260 Union Pacific check, to Meldrum’s general account; and no distinction was made in the slip between one ami another. The identity of each was lost in the general aggregate. The slip amounted to a written direction to the bank to credit Meldrum’s account with the sum of $2,852.90, and, accordingly, this was what the bank did. The amount was immediately thrown among the other funds of the bank, and was thereafter undistinguishable from them, not by the unauthorized act of the bank, but in consequence of the act of Meldrum himself. Meldrum and Smith may both have intended that this particular check should be taken upon some condition, or subject to some limitation, not applicable to the other sums embraced in the slip; /but their intention was not carried into effect, and it is with their acts, and not their naked intentions, that we are at present concerned.
Pursuing our investigation a little further, we find strong reasons for concluding that whatever might have been the intentions of Meldrum and Smith in relation to the check prior to its deposit, at the time Meldrum made the deposit slip, and actually delivered the check to the bank, it was understood that it should go into his personal account. The books of the bank, showing the dealings between it and Mel-drum for sometime before and after the 1st of July, were introduced by the defendant. They show a running account of deposits and checks during the entire time. On the evening of June 30th Meldrum’s balance was $625.93. On July 1st he made the deposit of which we have spoken. It was the only deposit made by him that day. Adding together his balance and the amount of that deposit, we find that he had then in the bank to his credit $3,478.88. On that day he drew out of the bank upon his check $1,066.67, leaving to his credit only $2,412.21, which was $201.79 less than the amount of the Union Pacific check. The natural, if not unavoidable, conclusion is that in making a check the payment of which would necessarily impair the fund in question, he regarded it as being on deposit subject to withdrawal by check, and therefore belonging to his general account; *261 and Smith in paying his check must also have so regarded it. He continued checking against his balance without further deposit until July 11th, but this fund was not made good until July 16th. On July 19th he made a check payable to himself for his entire balance then in bank, amounting to $2,943.71, and received, as has been stated, $1,000 in cash, and a draft on Kountze Bros, for $1,943.71. The entire histoiy of the money represented by the Union Pacific check, as written by Mr. Meldrum and Mr. Smith, is the history of money placed by Mr. Meldrum to his individual credit in Smith’s bank, and withdrawn by him from time to time at his pleasure; and the claim that there was anything more sacred about it than about his other moneys with which he intermingled and confounded it, is unsubstantial.
As to whether the money realized from the check ever went into the hands of the assignee the evidence is unsatisfactory and inconclusive. But it is unnecessary to give it particular notice, because we are unable to say that the decision of the trial court upon the character of the deposit made by Meldrum was not right.
But there is another theory upon which the plaintiffs claim a right to prevail in this suit; and it is that the bill of exchange drawn by Smith upon Kountze Bros., payable to Meldrum, was an equitable assignment to him of money of the drawer in the hands of the drawees. The making of a draft does not ipso facto operate as an assignment. Before this draft was presented, the assignee notified the drawees of the general assignment made by Smith, and directed them not to pay the draft. The draft could not operate as an assignment of the money in Kountze Bros.’ hands until its presentation to them, and not then unless they accepted it. Without acceptance, Meldrum could have maintained no action against them for the money, and the reason why he could not do so is because the mere act of making the draft did not transfer title in the money to him; and until it should operate to invest him with owernership of the money, it was no assignment. The failure to realize the money upon *262 the draft left him a creditor of Smith on account of the unpaid balance due him, and as a creditor his position was no better and no worse than that of any other general creditor. See Grammel v. Cramer, 55 Mich. 201; Ray v. Hiller, 11 Colo. 445.
But there is a peculiarity about this draft which we cannot avoid noticing. The following is a copy of the paper:
“$1,943. Bank oe Sterling. No. 7821.
“ M. H. Smith.
“ (Drawees are advised that M. H. Smith has assigned.)
“ Sterling, Colo., Jul. 18, 1893.
“ Pay to the order of N. H. Meldrum, $1,943.71 (nineteen hundred forty-three and f^) dollars.
“ M. H. Smith,
“ (King) Cashier.
“To Kountze Bros., New York.”
It appears from the face of this document that the assignment had been made before the bill was drawn. If so, Smith had no right to draw it. But, however this may be, it advised the drawees that the fund was no longer the property of Smith, and that the draft was therefore worthless. With that notification staring them in the face, they would not have been justified in honoring the draft; and with that introduction, the bill did not purport to be drawn against any fund, and therefore could not operate as an assignment of anything.
Whatever indebtedness there is, is owing to Meldrum alone, and not to Tedmon and Meldrum; and Tedmon is not a proper party to any proceeding for its allowance or recovery.
The judgment must be affirmed.

Affirmed»